IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| COUNTRY CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 3:09CV803-MEF |
| RONDA ROWE MASSEY, | ) ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Country Casualty Insurance Company filed this declaratory judgment action against defendant Ronda Rowe Massey seeking a determination from the court regarding whether a homeowner's insurance policy it issued covering a dwelling owned by Massey is void *ab initio* and, if not, whether it provides coverage for loss arising from a fire at the dwelling.[1] This action is presently before the court on plaintiff's motion for summary judgment (Doc. # 18). Although she was given an opportunity to do so (see Doc. # 20), defendant has not responded to the motion. Upon consideration of the motion, the court concludes that plaintiff's motion for summary judgment is due to be granted.

**Summary Judgment Standard**

A party seeking summary judgment bears the initial burden of demonstrating to the court the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions that it believes show an absence of any genuine

---

[1] This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

issue of material fact.  Hairston v. Gainesville Publishing Co., 9 F.3d 913 (11th Cir. 1993).

For summary judgment purposes, an issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  Matsushita Electrical Industrial Company v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The court must view the evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party.  Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987).  It is improper for this court to weigh conflicting evidence or make credibility determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.  Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment."  Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

> Where, as here, the moving party will bear the burden of proof at trial,
>
> that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to summary judgment unless the non-moving party, in response, come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.

Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993)(quoting United States v.

Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)(*en banc*)).

## Background

On June 15, 2007, defendant Ronda Rowe Massey[2] completed a home insurance application with plaintiff Country Casualty Insurance Company through its agent, Theri Brooks.  The application requested insurance effective June 18, 2007, the purchase date, for a dwelling located at 3754 Opelika Road in Phenix City, Alabama, which was purchased by Rowe for $150,000.00.  In the application, the dwelling is described as an "Owner-Occupied Dwelling" and, also as a "Primary Residence" which is "Owner occupied."  At the end of the two-page application, above defendant's signature, is the statement, "I declare that I have read this application, that the above statement and facts are true, and that no material facts have been suppressed or misstated....THIS APPLICATION IS PART OF THE POLICY CONTRACT AND ANY MISREPRESENTATION OR FALSE STATEMENT MAY VOID THE POLICY."  During the application process with Brooks, Massey did not indicate that the dwelling would be occupied by a tenant or otherwise rented; instead, she represented that she would be living in the home.  (Brooks affidavit and Atch 1).  Country Casualty issued an insurance policy covering the home and renewed the policy a year later. (Plaintiff's Exhibits 5, 9).

At the time that Massey purchased the house in June 2007, Randy Cason was occupying the house; he resided there until about the end of July. Massey was then living at

---

[2] At the time of the application, defendant's name was Ronda Kei Rowe, her maiden name; she married Timothy Massey on September 27, 2008.  (Ronda Massey depo., pp. 3-7).

927 Vineville Street in Columbus, Georgia. When Cason moved out, Massey spent some

time cleaning the house and doing a "few cosmetic things before [she and Tim Massey and

their children] were going to move in." (R. Massey depo., pp. 7-8, 16-19). She had moved

some furniture and other "stuff" into the house, when Roderick West approached her and

asked whether his girlfriend, "Shell" Glanton, and their two children could move into the

home. Massey had West sign a one-year lease, which – although West and his family did

not move into the home until late August or early September – Massey backdated to August

1, 2007 for a reason she cannot recall. Under the lease, West was to pay Massey $700 per

month in rent. (Id., pp. 17-21, 104; Exhibit 6 to R. Massey depo.; Glanton depo.). Massey

stayed at the house with the tenants intermittently for two months. (R. Massey depo., pp. 20-

21).[3] West and his family were in the process of moving out of the house when, on

---

[3] In its brief, plaintiff indicates that Massey testified that she and her two children lived at the Opelika Road house "off and on, with Rod West, Trelise Glanton ["Shell"], and their two children." (Plaintiff's brief, p. 4). Plaintiff's deposition testimony on this point is as follows:

Q.      . . . [H]ow long did you and Shell live there together?

A.      Together?  Not a constant, probably two months.

Q.      Two months?

A.      Not a constant, though.

Q.      All right.

A.      Because, you know, on the weekends and stuff, I'd go stay with Tim or, you know, I'd be over there and not feeling like going to the house or whatever; we'd just stay there.  Because we still had some of our stuff there

September 20, 2008, the house was destroyed by fire.  (Glanton depo., pp. 8-9; R. Massey

depo., p. 80).  Massey learned of the fire two days later, on Monday, September 22, 2008;

Massey was not then living in the house and had not had a key to the house since sometime

before April 2008.  (Massey depo., pp. 74, 77-78, 80, 91-92).[4]

### Discussion

Citing Ala. Code § 27-14-7, Country Casualty argues that it is entitled to a judgment

declaring that the policy is void *ab initio* because of Massey's misrepresentation in the

application process.  In Stephens v. Guardian Life Ins. Co. of America, 742 F.2d 1329 (11th

Cir. 1984), the Eleventh Circuit, interpreting Alabama law, wrote:

> As noted by the Alabama Supreme Court, § 27-14-7 furnishes three separate
> grounds for the rescission of a policy.  The most innocent misrepresentation
> will afford a reason to rescind if the truth is either material to the risk or, even
> if immaterial, would have caused the particular insurer acting in good faith to
> have declined coverage in the amount and at the rate obtained by the applicant.

---

still too. So since he -- it was -- it was supposed to be the process of all of us
going over there and living there, because our house now is too small, and so
it's supposed to be all of us and it just didn't work out that way.

And so I was going to stay out there. But like I said, it's -- there were
real nice at first, but she just got more aggressive and Rod was -- I don't know.
It was just a dumb mistake, I guess.

(R. Massey depo., pp. 20-21).  Roderick West testified that he and "Chelle" and his children
moved into the house within a day or so after the previous tenant, "Matt," was evicted from
the house and that Massey never lived in the house while West and his family lived there.
(West depo., pp. 14-16, 46; see also Glanton depo., p. 30).  For purposes of this motion, the
court accepts Massey's testimony as true.

[4] Massey's Regions Bank checking account statement for August, September and
October 2008 show her Vineville Street address.  (Plaintiff's Exhibit 6).

Id. at 1333 (footnote omitted)(citing National Sav. Life Insurance Co. v. Dutton, 419 So.2d 1357 (Ala. 1982)).  To establish a claim or defense on the basis of the statute, an insurer "need only ... present[] evidence that the [applicant for insurance] made the misrepresentation and that [the insurer] would not have issued the homeowners policy had it known the actual facts."  Allstate Ins. Co. v. Swann, 27 F.3d 1539, 1543 (11th Cir. 1994).

It is undisputed that, when Massey applied for insurance effective June 18, 2007, Randy Cason was living in the home and continued to live there for several more weeks. (R. Massey depo., pp. 18-19).  Massey did not tell the agent, Brooks, that the property was then occupied by someone other than Massey, and Massey signed the application for insurance indicating that the property to be insured was an "owner occupied dwelling." (Brooks aff. and atch).  Country Casualty has introduced the testimony of Deborah D'Ambra of its underwriting department that it "will not issue a policy of insurance on a non-owner occupied dwelling where that is the only policy of insurance held by a prospective insured[,]" and that it will insure a non-owner occupied dwelling only if the owner of that dwelling has his or her primary residence insured by Country.  D'Ambra further testifies that defendant "did not have any other policies of insurance with Country at the time that she insured the property located at 3754 Opelika Road" and that, "had Country been informed that this was a tenant occupied dwelling, the policy of insurance that Country issued that insured the dwelling located at 3754 Opelika Road would not have been issued."  (Plaintiff's Exhibit 5, ¶¶ 6-7).

Viewed in the light most favorable to Massey, her testimony permits the inference that

she intended to move into the home later and changed her mind only when West approached

her about renting the property. Massey also testified that some of her possessions remained

at the insured dwelling for some period of time and that she initially stayed at the house

intermittently, for a couple of months, with West's family. (R. Massey depo., pp. 18-21).

However, Massey's intent to move into the home at a later date does not change the fact that,

when she signed the application, and for several weeks after the effective date of the

insurance policy, Cason – not Massey – resided in the home, contrary to the representation

in the application. Additionally, even though Massey stayed at the home intermittently with

West's family for a couple of months, her vague testimony on this point does not permit an

inference that the insured dwelling was her "primary residence" (as indicated on the

insurance application) even for that two-month period of time.[5]

Country Casualty renewed Massey's homeowner's policy in May 2008, for the period

beginning on June 18, 2008. (Plaintiff's Exhibit 9). The policy continued to provide

homeowner's dwelling coverage and, by its express terms, incorporated the original

application for insurance. (Id. at pp. 2, 10 of Doc. # 18-10 and pp. 10-11 of Doc. # 18-11).[6]

---

[5] Massey has, at all times, possessed a Georgia driver's license. The license issued to her on October 30, 2008 shows 927 Vineville Street in Columbus as her address, as did her previous license. Massey testified in her January 2009 deposition that she had lived at that address for "about eight years." (R. Massey depo., pp. 4, 6-8).

[6] The policy states, under the heading "AGREEMENT":

"We" will provide the coverages "you" have purchased through the company named in the Declarations if "you" have paid the premiums and have complied with the policy provisions. When "we" refer to the policy "we" mean this

7

Massey testified that she received the policy renewal, which was mailed to the Opelika Road address and given to her by Glanton. (R. Massey depo., pp. 23-24).

It is undisputed that Randy Cason was living at the dwelling when plaintiff applied for the insurance policy and for several weeks after the effective date of the policy. Massey did not reside at the dwelling on the effective date and did not have a primary residence insured by plaintiff. D'Ambra's uncontradicted testimony is that Country Casualty would not have issued the homeowner's insurance policy covering the Opelika Road property had it known that the dwelling was not Massey's primary residence. Accordingly, plaintiff has established pursuant to Ala. Code § 27-14-7 that it is entitled to rescission of the insurance contract, even if Massey intended to move into the dwelling at a later date, after Cason moved out. Ala. Code § 27-14-7(a)(3)("Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy . . unless . . . [t]he insurer in good faith would . . . not have issued the policy . . . if the true facts had been made known to the insurer as required . . . by the application for the policy[.]"); see Dutton, 419 So.2d at 1360 (under § 27-14-7, "[a] representation need not be made with intent to deceive for an insurer to void an insurance policy"); Stephens, 742 F.2d at 1333 ("The most innocent misrepresentation will afford a reason to rescind if the truth . . . would have caused the particular insurer acting in good faith to have declined coverage in the amount and at the rate

---

policy booklet (titled Home Insurance Policy), *applications for insurance*, Declarations, and any applicable endorsements.

(Doc. # 18-10, p. 10 (page 4 of Home Insurance policy booklet))(emphasis added).

obtained by the applicant.").

Additionally, as indicated on its declarations page, the renewed policy effective at the

time of the fire provided coverage for the insured "dwelling" as set forth in Section 2,

Coverage C. (Id. at p. 2 of Doc. # 18-10). That section indicates that the policy provides

coverage for "[t]he dwelling on the 'residence premises'" (id. at p. 18 of Doc. # 18-10, p. 12

of policy booklet); the policy defines "residence premises," in pertinent part, as "[t]he . . .

dwelling where 'you' principally reside" (id. at p. 10 of Doc. # 18-10, p. 4 of policy booklet).

The policy defines "you" to refer to "the person shown in the Declarations as INSURED and

that person's spouse if a resident of the same household." (Id. at p. 8 of Doc. # 18-10, p. 2

of policy booklet). The declarations page names "Rowe Ronda" as the insured. (Id. at p. 2

of Doc. # 18-10). It is undisputed that Massey did not reside at the insured dwelling for any

part of the renewal period and that she did not reside there at the time of the fire. Therefore,

even if plaintiff were not entitled to rescission of the insurance policy, the policy did not –

by its express terms – provide coverage for the Opelika Road dwelling, as that was not where

Massey "principally reside[d]."[7]  Additionally, the policy provides, "'We' do not provide

coverage when any 'insured', whether before or after a loss, has ... [i]ntentionally concealed

---

[7]  In view of this conclusion, the court does not reach plaintiff's remaining
contentions. Plaintiff has separated its complaint for declaratory judgment as to its liability
under the policy into six separate counts, which set forth alternative bases for entering
declaratory judgment in plaintiff's favor. Having determined that plaintiff is entitled to all
of the relief it seeks – *i.e.*, a judgment declaring that it is entitled to rescind the policy and
that, under its terms, the policy does not provide coverage for Massey's fire loss – the court
does not reach the additional grounds raised in the complaint.

or misrepresented any material fact or circumstance; ... or ... [m]ade false statements[]
relating to this insurance." (Doc. # 18-11, p. 6, p. 33 of policy booklet).  It is undisputed that,
at the time she applied for the policy, Massey misrepresented the dwelling's occupancy status
as of the policy effective date as owner-occupied and, further, that she thereafter intentionally
concealed the fact that the Opelika Road dwelling was not her primary residence.  Massey's
misrepresentation and concealment fall within the terms of the exclusion and, for this
additional reason, the policy does not provide coverage.

## CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge
that plaintiff's motion for summary judgment be GRANTED, and that judgment be entered
declaring that: (1) plaintiff is entitled to rescind the policy issued to defendant and insuring
the premises at 3754 Opelika Road, Phenix City, Alabama; and (2) under its express terms,
the policy did not provide any coverage for the dwelling located at that 3754 Opelika Road,
Phenix City, Alabama, or otherwise.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate
Judge and to serve a copy on the parties to this action.  The parties are DIRECTED to file
any objections to this Recommendation on or before January 3, 2011.  Any objections filed
must specifically identify the findings in the Magistrate Judge's Recommendation objected
to.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the
Magistrate Judge's report shall bar the party from a *de novo* determination by the District

Court of issues covered in the report and shall bar the party from attacking on appeal factual

findings in the report accepted or adopted by the District Court except upon grounds of plain

error or manifest injustice.  Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144,

1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 20th day of December, 2010.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE